The counsel for Williams presented the following petition for a re-hearing.

The counsel for the plaintiff in error, cannot consent, to pass the judgment of affirmance in this cause.
It is with reluctance that this is attempted, and they assure the court, that they are unwilling, at all times, to increase the duties and burdens of the court,. already too arduous, by recalling the attention of the court to the reconsideration of causes decided, and the examination of petitions. But notwithstanding this, adding such a burden, is felt by the bar, yet frequently an honest difference of opinion will exist between legal characters, and one mind often takes one view of a case, which has escaped another, and, consequently, such revisions must be sometimes required.
It is true the record presents a tangled history, and there are many irregularities, but still, all that this-court has to revise, may be brought into a small com* pass, and there is but one point involved.
Williams, as assignee of Ralph Morgan, brought, an action, and declared in covenant against Davis, on a decree dated on the 9th of January, 1801, stipu? lating to pay £105. on the performance of a precedent condition by Morgan. He avowed the performance, or an excuse for non-performance. Davis filed sundry pleas, and issues were joined thereon, and several juries were empannelled and sworn, some of whom found verdicts which were set aside.
. At length, a general order of reference was made in the following terms:
By consent,'“all matters in difference between them, are referred to the final award, arbitration and *535 •determination of James Jamison, jr. and Kenas Far■row, and their award, when returned, or the award of such person, as they should choose for an fin the case of their disagreeing,) shall be made the judgment of this court.”
The arbitrators awarded a small sum in damages, in favor of Williams, end his costs, made payable in paper of the Bank of the Commonwealth, and not in money. On the return of this award, it was excepted to, on the ground that the arbitrators had no power to award bank paper, or the court to render judgment on the award. The court overruled this exception and sustained the award, and this court has affirmed that judgment.
It is with confidence contended, that the arbitrators exceeded their authority. It is, therefore, immaterial whether the award will be a bar to further proceedings or not.
What is the true construction of the order of reference? -It simply refers to the referees kiall matters of difference.” What are the matters of difference? They all appear from the pleadings and issues in the cause, and may be compressed into this small corn-pass. The plaintiff alleged a breach of covenant, and that he was entitled to compensation in money, for the damages. The claim was for money, not for other commodities. The defendant denied the existence ef a breach or claimed an excuse, if there was any, and contested the right of recovering money. The arbitrators say there is a breach, but they will give property for compensation. The plaintiff, it is insisted, did not give them the power to compel him to accept any thing but money. The delegation of power to them, does not include this, which they have attempted to exercise. If it did not, then it is clear the award ought to have been set aside. It is readily admitted, that error in judgment of referees, if within the scope of their powers, forms no ground to assail an award. But if .in an error, they exceed their powers, the rule is different. Nor can.the court correct an award with that defect.- For if the arbitrator’s had been induced to believe that such an act exceeded their powers, and had been induced to *536 apply the corrective, which was their duty, it cannot be told by the court, what their corrective would have been, and therefore, the court cannot make an amendment in favor of the award, at which they can only guess.
Let us suppose for a moment, that the referees bad awarded that Williams should be compelled to accept his damages in pumpkins, potatoes, or corn, could it be pretended that the arbitrators had the power? Certainly not. There was no power in the court to render such judgment, and of course it follows, that the arbitrators, by their award, could not compel the court to render a judgment unknown to the law.
It is laid down as incontestible, that on this bond, in an action at law thereon, there was no power in any court in the commonwealth, acting as judges at common law, to render judgment for any thing else but money, and this court has repeatedly treated bank paper, as other commodities. It is true that this .judgment was rendered after the passage of the act authorizing the courts to render judgment in commonwealth’s paper; but that act did not include this case, for the following reasons:
1st. The act embraces only cases of contracts, made ■expressly payable in bank paper, and this is not one.
2d. The act embraces cases where the plaintiff has ■endorsed his willingness to accept paper. Here he made no such endorsement.
3d. The act embraces only cases of contracts for .paper, made after its passage, and this was made long before. See Feemster vs. Ringo, V. Monroe, 336; Duckham vs. Smith, Ib. 372. It is clear, therefore, that no judgment could be rendered ior any thing but money, for a breach. The pleadings and issues formed by the parties, embraced nothing else; the order of reference referred nothing else. The award of bank paper is, tiierefore, usurpation.
It may be insisted that compelling the plaintiff to accept bank paper, was only the exercise of an equitable power.by the arbitrators. If so, the law is tor us; for they could exercise no equitable powers; legal <|uestions alone were referred.
*537 IDnthis point we would beg leave, respectfully, to call the attention of the court, to the case of Fitzgerald vs. Fitzgerald, Hard. 227, and cases there cited. In that case'an ejectment ivas brought, defendants made, and issue formed. The parties, by consent, entered the order of reference. That all matters in dispute between both, at common law and in equity, “be referred.” The arbitrators attempted to decide matters of equity under this order, and the award was decided to be void, so far as it decided equity; and whv? Because, although the pleadings at lav/ were sufficient to show the matters in controversy, at law, oras to the legal estate; yet they did not show any equitable matter in contest, and no pleadings of equitable matter, or statement, under the statute, making up an equitable issue was made part of the record; therefore, the court held that the award, as it decided equitable matters, was void, although the order said the arbitrators might do it; in other words the referees exceeded their powers.
This shows that the pleadings between the parties-, whether at law or in chancery, measure the power of the referees. For instance, if there be a declaration and pleas at law, they measure the matter refer-ed, and the arbitrators cannot go beyond the legal controversy. If there be a bill and answer in chancery, they likewise show what is in contest, and limit the power of the referees. Or there may be, under the act, a statement of the matters in controversy, as a substitute for pleadings, and the issue such statement makes, may be either of a legal or.equitable character, or a mixture of both, and it bounds, defines and limits the power of the arbitrators.
Suppose the bond or covenant sued on, had been for breach of contract in not conveying a tract of land, and an action at law brought for a breach, could the arbitrators have awarded that the defendant should convey and the plaintiff accept title? Evideritly not; and according to the case last cited, they could not have done it, if matters of equity had been refered, totidem verbis. Suppose that in this case, the arbitrators had awarded that the plaintiff should accept land, as compensation, or that he should *538 accept ihe property stipulated to be paid originally, would it have been within the submission? Certainly not. Nor is the reason stronger for turning the demand into bank paper, when money alone was involved ju jjle controversy refered.
It is respectfully insisted, that the assignment of error, does fully bring before the court, the authority of the arbitrators, to award Commonwealth’s Bank paper. For written exceptions were made to the award below, and overruled by the coujjt. These exceptions expressly question the right of the referees to award bank paper, and it is assigned for error here, that the court below erred in not setting aside the award below, that is, on the grounds there taken. That assignment is on a separate piece of paper in the record, and does embrace every question which can fairly operate on (he atvatd.
We have assumed the position as indisputable, that the court itself, could not render judgment for anything else than specie, except in cases coming within the statute authorizingjudgment in bank paper. We have not thought it necessary to quote authorities for this. We will, however, refer to one, and that is, the case of White vs. Green, III. Monroe, 155. If the court could not do it, before the case was refered, the referees could not grant to the court authority to' do so; for that would be supposing that the referees could grant power to the court, instead of the court to the referees.
We have made but this point, as to the award, satisfied that, whatever other irregularities may exist in the record, the court cannot travel further bac-k than to say- whether.the award should stand or not. The court cannot direct judgment to be rendered on former verdicts. For if, after a verdict is set aside, the party amends his pleadings, he has been held by this court to waive his right to his former veidict. Much stronger is the reason for saying, that if he refers the cause afterwards, he abandons his claim to her former verdict.
A re-hcaring is respectfully solicited.
Award, in tained, so far as it is good, provided, in this partie.u-lar,Ube»mi-
that “.n.pt.’pay ¡o pl’tff- $io, &. -costs, which may bo dis-ollarKc’íJ m iS' court render-.iiidgment for P!amlif verse it. For,, he is not in-jurec1,